## Case No. 806.

### BALDWIN et al. v. WILDER et al.

[6 N. B. R. 85.]

Circuit Court, W. D. Michigan. Dec., 1871.[1]

BANKRUPTCY — SUSPENSION OF PAYMENT OF COMMERCIAL PAPER.

[1. Prior to the amendment of July 14, 1870, (16 Stat. 276, c. 262, § 2,) to the bankruptcy act, a suspension of payment of commercial paper for 14 pays, and within six months from the filing of the petition, was per se an act of bankruptcy, although the suspension was not fraudulent.]

[Distinguished in Mendenhall v. Carter, Case No. 9,426.]

[See Ex parte Thompson, Case No. 13,936; Ex parte Hollis, Id. 6,621; Ex parte Weikert, Id. 17,361; Ex parte Bininger, Id. 1,420; Ex parte Hall, Id. 5,920.]

[2. But, in any event, under the provision of the amendment of July 14, 1870, that if a merchant has fraudulently stopped payment, "or has stopped and suspended and not resumed payment of his commercial paper he shall be adjudged a bankrupt," such suspension, com-

---

[1] [Reversing an unreported decree of the district court.]

menced before and continued after the amendment, is per se an act of bankruptcy.]

[Distinguished in Re Hay, Case No. 6,253. Followed in Re Raynor, Id. 11,597.]

[3. A creditor need not commence proceedings to have his debtor adjudged a bankrupt within six months from the first suspension of the payment of commercial paper, if he can show that the debtor had suspended payment within the six months, although the suspension commenced before that time.]

[Approved in Re Raynor, Case No. 11,597. Disapproved in Re Brewer v. Bemis Brewing Co., Id. 1,850.]

[Appeal from the district court of the United States for the western district of Michigan.

[In bankruptcy.]

Don M. Dickinson, for creditors.
Eggleston & Kleinhaus, for debtors.

EMMONS, Circuit Judge. The only question necessary to notice is whether a suspension of payment of commercial paper for fourteen days, subsequent to the amendment of July fourteenth, eighteen hundred and seventy, and within six months from the filing of the petition, is per se an act of bankruptcy, when there has also been a suspension of payment of the same paper before that enactment. The learned judge of the court below held that a suspension commencing before the amendment and continued afterwards, was not affected by it, but must be governed by the original act under which it commenced; holding, also, that under the act as it stood before the amendment a suspension for fourteen days, without fraud, was not an act of bankruptcy. He dismissed the petition. We are unable to concur in either of these views. A suspension of payment for fourteen days, before the amendment, was per se an act of bankruptcy. If this were not so, we are clear that such suspension commenced before and continued after the amendment, for fourteen days, is so.

While section thirty-nine stood in its original form, a large majority of the adjudications held that under it a suspension of payment for fourteen days was per se an act of bankruptcy. In re Wells [Case No. 17,387] was a petition in invitum in the northern district of New York. The petition alleged that the respondent "being a merchant, &c., fraudulently stopped and suspended, and had not resumed payment of his commercial paper within a period of fourteen days." There was proof of the suspension, but no allegation or proof that it was fraudulent. Hall, J., says: "It was contended on the argument that this provision which authorises proceedings in invitum against any person, 'who, being a merchant, &c., has fraudulently stopped or suspended and not resumed payment within a period of fourteen days,' does not authorise such proceedings unless the original stoppage or suspension of payment was fraudulent, no matter how long such suspension may be continued." He

holds that such is not the true construction of the provision, but that "its true construction requires an adjudication if a merchant, &c., who has suspended and not resumed payment of his commercial paper within a period of fourteen days, although such suspension or stoppage was not fraudulent." "The provision," he says, "embraces two cases: the one of an original, fraudulent stoppage, in which proceedings may be instituted at once, and the other of a suspension of payment, not fraudulent, and not per se an act of bankruptcy, but which, if continued for more than fourteen days, becomes an act of bankruptcy by its continuance." He applies the same rule to a petition where there was an averment of fraud in the petition. In re Weikert, [Case No. 17,361.] See, also, In re Cowles, [Id. 3,297.] In Re Thompson, [Id. 13,936,] Drummond, J., uses language which has been literally adopted by the amendment of July, eighteen hundred and seventy. Similar rulings are made in Re Sohoo, [Id. 13,162,] and Doan v. Compton, [Id. 3,940.] In Re Noyes, [Id. 10,371,] Longyear, J., in his charge, adopted and applied the doctrine. I think the opinion of Shipman, J., may be added to these. In re Ballard, [Id. 816.] Certainly he does not, as the respondents' counsel suppose, rule the other way.

A contrary construction makes the law read substantially as follows: If the merchant fraudulently suspends at all, if but for one hour, he shall be adjudged a bankrupt and the same consequence—no more, no less —shall issue if he continue this fraudulent suspension for fourteen days. All in reference to the fourteen days' suspension is thus stricken from the law. Were it necessary to sustain this petition we should reject this latter construction of the original act, and say a fourteen days' suspension is sufficient without fraud. A less number of judgments, with varying and somewhat contradictory reasons, decided that the petition must in all cases contain an averment that the stoppage was fraudulent. In re Leeds, [Case No. 8,205;] Gillies v. Cone, [Id. 3,095;] In re Davis, [Id. 3,615;] In re Lowenstein, [Id. 8,574;] In re Dibblee, [Id. 3,884.] But these same judgments, and others by the learned judge, hold that suspension by a solvent debtor is fraudulent; that the like act by an insolvent who neglects himself to go into bankruptcy is also fraudulent; and when it is added that he also holds that the omission to pay a single note at maturity is evidence of insolvency, it is not perceived that the least difference exists between the practical results of his judgments and those which simply affirm that suspension of fourteen days is per se sufficient. Substantially the same criticism may be made in reference to the decision by Field, J., in Re Jersey Window Glass Co., [Case No. 7,292.] Indeed, they who hold that the fourteen days' suspension is insufficient without fraud, create

such severe tests in reference to its existence, that practically mere suspension becomes sufficient. We prefer the more direct and less technical mode of arriving at the same result, which gives all the clauses of section thirty-nine a rational meaning.

It was to terminate this apparent conflict, and enact in plain language the construction which had made the fourteen days' suspension an act of bankruptcy per se, that the amendment was passed. It is in the very words of several judgments declaring how the former clause should judicially be read. It provides that if the merchant, &c., has fraudulently stopped payment, "or has stopped or suspended and not resumed payment of his commercial paper within a period of fourteen days he shall be adjudged a bankrupt." Looking to the reading of the original enactments, its literal adoption by an amendment, and the canons of interpretation which nearly all tribunals which administer the statute have to it, as a remedial and beneficient law whose spirit of equality should be extended by liberal constructions, I think no such exception to the operation of this clause should be set up by judicial implication. A suspension of payment should not be excluded because it had commenced before its passage. 2 N. B. R. 123, [In re Locke, Case No. 8,439;] 3 N. B. R. 86, [In re Muller, Id. 9,912;] 2 Abb. 243, [Silverman's Case, Id. 12,855.] I know of no precedent for giving a purely remedial statute a wholly prospective operation unless there is something in its language or nature that imperatively demands it. The general rule is quite the other way.

It seems to us, however, that this case requires no retrospective application of the amendment. The suspension continued for months after it was adopted. It is none the less a suspension afterwards, because there was also one before. Must a creditor commence proceedings within six months from the first suspension of commercial paper? Would not the petition be sustained by showing that the debtor had fraudulently suspended within six months, even though it commenced beyond that time? Is the suspension an indivisible act that once committed is not continuing? The law is full of analogies to the contrary. Every fourteen days' suspension, no matter how often repeated or how long continued, are but successive acts of bankruptcy, and the suspension by the respondents in this case, after the amendment, we must hold to be within it. Decree below dismissing petition reversed and ordered that an adjudication of bankruptcy be entered.

---

BALDWIN, (WOODSIDE v.) See Case No. 17,995.

BALDWIN MANUF'G CO., (WHIPPLE v.) See Case No. 17,514.

BALDY, (PIPER v.) See Case No. 11,179.

BALE, (UNITED STATES v.) See Case No. 14,504.

---

## BALES OF.

[NOTE. Cases cited under this title will be found arranged in alphabetical order under the quantity or number of bales; e. g. "Bales of Cotton. See Two Hundred and Eighty-Two Bales of Cotton," Cases Nos. 14,291 and 14,-292.]

---

BALES OF COTTON, (STEPHENS v.) See Case No. 13,366.

BALES OF TOBACCO, (UNITED STATES v.) See Case No. 14,505.